JUDGE'S COPY

DMB:MEH:all/2001V00189

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT ANDREW GAINES,       :
           Petitioner      :       No. 1:CV-01-0183
                       :
      v.                          :       (Judge Rambo)
                       :
MICHAEL ZENK, et al.,        :
           Respondent      :

FILED
HARRISBURG, PA

APR 26 2001

MARY E. D'ANDREA, CLER
Per _____
           Deputy Clerk

GOVERNMENT'S EXHIBITS IN SUPPORT OF RESPONSE TO
THE PETITION FOR WRIT OF HABEAS CORPUS

DAVID M. BARASCH
United States Attorney

MATTHEW E. HAGGERTY
Assistant U.S. Attorney
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA    17108-1754
717/221-4482

Date:     April 26, 2001

## TABLE OF EXHIBITS

Judgment in a Criminal Case dated April 1, 1993,
United States v. Gaines, No. 2:91CR209-09 . . . . . . . . . Exh. 1

Recommendation of United States Magistrate
Judge dated May 28, 1998, Gaines v. United
States, No. 1:97CV827 . . . . . . . . . . . . . . . . . . Exh. 2

Order and Judgment dated November 13, 1998,
Gaines v. United States, No. 1:97CV827 . . . . . . . . . Exh. 3

General Docket, U.S. Court of Appeals for the
Fourth Circuit, In re Gaines, No. 00-0876 . . . . . . . . Exh. 4

# TAB - 1

ENTERED ON DOCKET

AO 245 S (Rev. 4/90)(MDNC Rev. A 12/92) Sheet 1 - Judgment in a Criminal Case

**APR -1 1993** UNITED STATES DISTRICT COURT
Middle District of North Carolina

BY: _____

FILED
APR 1, 1993

UNITED STATES OF AMERICA

v.                                            Case Number 2:91CR209-09

ROBERT ANDREW GAINES
      Defendant.

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, ROBERT ANDREW GAINES, was represented by Ray Alexander.

On motion of the defendant the court has dismissed count 9 and the defendant has been found not guilty on counts 3 and 6 and is discharged as to such counts.

The defendant was found guilty on counts 1-2,4-5,7-8 after a plea of not guilty. Accordingly, the defendant is adjudged guilty of such counts, involving the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21:846,841(a)(1) &(b)(1)(A) | Conspiracy: Possess with intent to distribute and distribute cocaine base (crack). | 11/27/91 | 1 |
| 21:841(a)(1)&(b)(1)(B) | Possess with intent to distribute crack. | 12/21/89 | 2 |
| 18:924(c)(1) | Carry and use of firearms during drug trafficking crime. | 2/28/91 | 4 |
| 21:841(a)(1)&(b)(1)(A) | Possess with intent to distribute crack. | 2/26/91 | 5 |
| 21:841(a)(1)&(b)(1)(A) | Possess with intent to distribute crack. | 3/29/91 | 7 |
| 21:841(1)&(b)(1)(C) | Possess with intent to distribute cocaine. | 9/13/91 | 8 |

As pronounced on February 25, 1993, the defendant is sentenced as provided in pages 2 through 4 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $ 300.00, for counts 1-2,4-5,7-8, which shall be due immediately.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Signed this the ___1st___ day of ___April___, 1993

_____
N. Carlton Tilley, Jr.
United States District Judge

Defendant's SSN: 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
Defendant's Date of Birth: 4/2/71
Defendant's mailing address: 529A Oates Avenue; Brooklyn, NY

GOVERNMENT
EXHIBIT
1

44.

AO 245 S (Rev. 4/90)(MDNC Rev. A 12/92) Sheet 2 - Imprisonment

Defendant:  ROBERT ANDREW GAINES
Case Number: 2:91CR209-09

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of two hundred and thirty-five (235) months as to Counts 1-2, 5 and 7; two hundred and thirty-five (235) months as to Count 8 to run concurrent; sixty (60) months as to Count 4 to run consecutive to preceding sentences.

The Court makes the following recommendations to the Bureau of Prisons:
    That defendant be incarcerated in a facility in or near New York.
    That defendant be incarcerated in a separate facility from the following named co-defendants:
    Neville Brooks, Dexter Emmanuel Hinton, Patrick Ray McCall, Jr., Robert Michael Donovan,
    Patrick P. Paret, Willie Pearson, William Robertson, Gary Grannum and Sharon Neal.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this Judgment

_____
United States Marshal

By _____
Deputy Marshal

AO 245 S (Rev. 4/90)(MDNC Rev. A 12/92) Sheet 3 - Supervised Release

Judgment--Page 3 of

Defendant: ROBERT ANDREW GAINES
Case Number: 2:91CR209-09

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of five (
years as to Counts 1-2, 5 and 7; five (5) years as to Count 8 to run concurrent with supervised releas
imposed in Counts 1-2, 5 and 7; and three (3) years as to Count 4 to run consecutive to the supervise
release imposed in the preceding Counts.

While on supervised release, the defendant shall not commit another federal, state, or local crime; shall not illegally posse
a controlled substance; shall comply with the standard conditions that have been adopted by this court (set forth below); and sh
comply with the following additional conditions:

1.    If ordered to the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in which t
      defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

2.    If this judgment imposes a fine, special assessment, costs, or restitution obligation, it shall be a condition of supervised releas
      that the defendant pay any such fine, assessments, costs, and restitution that remain unpaid at the commencement of t
      term of supervised release.

3.    The defendant shall not own or possess a firearm or destructive device.

4.    The defendant shall participate in a substance abuse treatment program, which may include urinalysis or other forms of testi
      as directed by the Probation Officer.

5.    The defendant shall provide any requested financial information to the Probation Officer.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this Judgment:

1)    The defendant shall not leave the judicial district without the permission of the court or probation officer.
2)    The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful a
      complete written report within the first five days of each month.
3)    The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation office
4)    The defendant shall support his or her dependents and meet other family responsibilities.
5)    The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or ot
      acceptable reasons.
6)    The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.
7)    The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer
      narcotic or other controlled substance, or any paraphernalia related to such substances.
8)    The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.
9)    The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convict
      of a felony unless granted permission to do so by the probation officer.
10)   The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscat
      of any contraband observed in plain view by the probation officer.
11)   The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcem
      officer.
12)   The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency with
      the permission of the court.
13)   As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendan
      criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and
      confirm the defendant's compliance with such notification requirement.

AO 245 S (Rev. 4/90)(MDNC Rev. A 12/92) Sheet 7 - Statement of Reasons

Defendant:  ROBERT ANDREW GAINES
Case Number: 2:91CR209-09

## STATEMENT OF REASONS

The court adopts the factual findings and guideline application in the presentence report.

**Guideline Range Determined by the Court:**

| | |
|---|---|
| Total Offense Level: | 38 |
| Criminal History Category: | I |
| Imprisonment Range: | 235 to 293 months |
| Supervised Release Range: | 5 years |
| Fine Range: | $ 25,000.00 to $ 15,000,000.00 |
| Restitution: | $ NA |

The fine is waived or is below the guideline range, because of the defendant's inability to pay.

The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reasons: The length of the sentence imposed, when coupled with the consecutive mandatory minimum is sufficient to address the sentencing concerns of Title 18 USC 3553(a).

# TAB - 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FILED
MAY 2 8 1998
IN THIS OFFICE
Clerk, U. S. District Court
Greensboro, N. C.

ROBERT ANDREW GAINES,  )
    a/k/a Smokey & Jamal,  )
                          )
         Petitioner,  )
                          )
        v.             )   1:97CV827
                          )   2:91CR209-9
UNITED STATES OF AMERICA,  )
                          )
        Respondent.  )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Robert Andrew Gaines, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. On February 7, 1992, petitioner was convicted as charged on six out of nine counts in which he was named as a member of a drug trafficking conspirator and a participant in other drug trafficking activities.[1] In Count One, petitioner was charged with conspiracy to possess with intent to distribute and to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 846. In Counts Two, Five, Seven and Eight, petitioner was charged with possession with intent to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1). In Count Four, he was charged with carrying or using firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

---

[1] Count Nine, charging petitioner with employing a person under eighteen years of age to violate 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. §§ 861(a)(1), (b), 841(b)(1)(C), was dismissed on motion of the defendant. The jury found petitioner not guilty on Counts Three and Six, charging petitioner with possession with intent to distribute 106.4 grams of cocaine base ("crack"), and carrying or using a firearm (a Mossberg, Model 500, 12-gauge shotgun), during and in relation to a drug trafficking crime, respectively. (Docket No. 44)

GOVERNMENT
EXHIBIT
2

On February 25, 1993, petitioner was sentenced to a term of imprisonment of 235 months on Counts One, Two, Five and Seven; to a term of 235 months on Count Eight to run concurrently with the sentence imposed on Counts One, Two, Five and Seven; and to a term of 60 months imprisonment on Count Four to run consecutively to the other two sentences.

Petitioner appealed on Counts One and Four, contending there was insufficient evidence to convict him on these counts, and that the drug amounts attributed to him at sentencing were wrong, and that his motion for a new trial should have been granted. The Fourth Circuit affirmed the convictions and sentences. <u>United States v. Broadus</u>, 39 F.3d 1178, 1994 WL 602745 (4th Cir. Nov. 4, 1994) (unpublished), <u>cert. denied</u>, 514 U.S. 1009, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995). On August 5, 1997, petitioner filed this § 2255 motion, alleging four grounds for relief. Grounds 1 and 4 allege prosecutorial misconduct in presenting false testimony to the grand jury in order to issue an indictment. Ground 2 alleges that his counsel was ineffective at pretrial, at sentencing, and on appeal. Ground 3 alleges that his conviction on Count Four, the weapons count, was invalid in light of <u>Bailey v. United States</u>, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

## BACKGROUND FACTS[2]

Gaines, Broadus, Sidberry, Brooks, and Patrick Paret knew each other in New York. In November of 1989, after Broadus told Brooks about the money to be made selling

---

[2] As summarized by the Fourth Circuit in <u>United States v. Broadus</u>, 39 F.3d 1178, 1994 WL 602745 at *1-*3 (4th Cir. Nov. 4, 1994) (unpublished), <u>cert. denied</u>, 514 U.S. 1009, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995).

crack cocaine in North Carolina, Broadus, Gaines, Brooks, Paret, and Gary Grannum, among others, went to Greensboro, N.C. with approximately two ounces of crack cocaine, and set up residence in local hotels. Once there, they divided up the drugs and each received packages of five hundred dollar value to sell and then gave the money to Broadus once they had sold them. Broadus and Grannum returned to New York City with the proceeds, bought more crack, and returned with it to Greensboro and continued drug dealing. Broadus supplied the money for frequent trips to New York to restock their crack supply, with different members of the conspiracy going at different times. Initially, Broadus and Paret controlled the packages and received the money, and Sidberry sold the drugs for Broadus.

Sometime in 1990, the group met Dexter Hinton, who lived in Greensboro. Broadus and his group received cocaine deliveries at the homes of different local Greensboro residents, including Hinton, and Broadus and Brooks would go there to pick them up, and then return to the hotel and divide them for resale. Brooks, Broadus, Gaines, Sidberry, and others were present when three to four ounces of crack were picked up and divided. Brooks met Pearson at Sidberry's house in New York while on one of the drug runs. Brooks and Sidberry had Pearson deliver about two ounces of crack cocaine to Greensboro. Pearson rented a house in Greensboro at 907 High Street, in the neighborhood where the conspirators were dealing. Pearson, Gaines, Sidberry, and McCall lived at the High Street residence, and occasionally Broadus, Miss Neal, or one of the drug couriers would stay there. Brooks, Paret, Pearson, and Patrick McCall were involved in drug activities out of the High Street house, as were the defendants Broadus, Gaines, and Sidberry. Both Broadus and Gaines supplied Brooks and the High Street location with drugs.

Grannum began supplying Hinton and Donovan, local Greensboro drug dealers in the housing projects, with drugs to sell. In June of 1990, Hinton met Broadus and began to chauffeur him for the purpose of making drug deliveries. Broadus supplied Donovan with cocaine to resell in the Greensboro projects. Subsequently, Broadus took him to High Street where he met Gaines, Sidberry, and Pearson. Broadus lived at 1414 Trinity Avenue in Greensboro, along with Miss Neal. Broadus wanted this residence and their phone number kept secret, with the exception of Gaines and Sidberry, among a few others.

Broadus was the head of this drug dealing organization, supplying drugs for distribution, and Gaines paid money to couriers who brought drugs down from New York and gave drugs to others to sell. Gaines recruited McCall in New York to bring drugs down to

-3-

Greensboro, which he did on several occasions, receiving the cocaine in New York from Gaines or Sidberry. On one occasion, McCall and Sidberry brought crack to Greensboro together on the bus, and gave it to Brooks. On another occasion McCall brought the drugs to Greensboro accompanied by Sidberry and Gaines and delivered the drugs to High Street. Sidberry and McCall went to New York in January of 1991 to buy drugs for resale in Greensboro, but the money was taken at the airport. On one occasion, Patrick Paret gave McCall cocaine in New York, which he took by train to Burlington, N.C., where he was met by Miss Neal, Broadus, Robertson, and Hinton. Broadus had paid for the trip. Catherine Hicks was one of Broadus' drug couriers who made numerous trips.

Hinton rented motel rooms several times for Broadus for the purpose of receiving and distributing cocaine, which arrived in $40,000 to $60,000 packages. Broadus or Miss Neal would give these packages to Hinton, who distributed the crack cocaine in the housing project areas of Greensboro. After Broadus and Miss Neal moved into Trinity, Hinton went there almost every day to obtain crack cocaine for distribution. Hinton and Broadus would deliver drugs to or pick up money from Gaines and Sidberry at High Street. Hinton met William Robertson in January of 1990, when he arrived in Greensboro. Robertson stayed with Broadus and Miss Neal at Trinity for about a week and then moved into High Street, for the purpose of working for Broadus in running the drug distribution there and to help Hinton in distributing drugs. Miss Neal delivered drugs to High Street and collected drug sale money there from Pearson at High Street, which she gave to Brooks or Broadus.

In early 1991, McCall moved into High Street, and his function there was to make sure the house was clean, i.e. that drugs were stored outside the house. McCall moved out of the High Street house in April of 1991 into a house on Holt Avenue. The High Street location closed down, but crack distribution continued from McCall's house on Holt Avenue, where Gaines and Sidberry also lived. McCall continued to go to New York to bring back packages of cocaine, and he would deliver them in Greensboro to Gaines, or if he wasn't there, to Sidberry, and once picked up cocaine in New York for Broadus and gave it to Hinton at Holt Avenue. At Holt Avenue, Gaines gave crack to McCall and Sidberry, who distributed it. Hinton received crack from Gaines at Holt Avenue, and also at the projects. Just prior to Hinton's arrest in November of 1991, he received a $17,500 package of crack sent by Grannum from New York. He gave Grannum the money for the crack, who gave it to Broadus. Although Broadus, Gaines, and Sidberry each utilized some different street level drug distributors, Broadus was the central figure

in supplying money and drugs. Sometimes Broadus received
drug packages and sometimes Gaines received them, but
they were often brought either by the same courier or by
couriers working together, and they often received each
other's packages.

Pearson brought cocaine to Greensboro from New York,
delivering the drugs to Brooks, Gaines, and Sidberry, who
converted it from powder to crack and cut it up. Brooks,
Gaines, Pearson, and Sidberry would then distribute the
drugs. On one occasion, a drug courier arrived at
Pearson's motel room, met by Broadus, who took some of
the drugs and left some for Brooks and Hinton. In
November of 1990, Pearson and Sidberry went to New York
to obtain crack cocaine, with money given to them by
Broadus and Gaines. When the drugs were brought back,
they were distributed by Brooks, Hinton, and Donovan.
Broadus supplied Pearson with an alias, Michael Anderson,
under which he could fly to New York to pick up drugs and
rent the High Street residence. Pearson delivered money,
obtained from street level drug sales, to Broadus at
Trinity Street.

Broadus and Hinton purchased an AR-15 rifle, which
was sometimes carried by Hinton in his car when he drove
Broadus around and picked up drug money. The AR-15 was
kept in Broadus' residence on Trinity, including times
when drug deliveries were made there. On January 28,
1991, Hinton called Broadus because Hinton had heard that
someone was trying to break into Hinton's girlfriend's
apartment. Broadus arrived with three weapons, an AR-15
assault rifle, a Tech9, and a .357, but gave the AR-15 to
Hinton to hold. Broadus left Hinton, and while he was
gone, the police arrived and arrested Hinton with the
AR-15 rifle, and the 12-gauge shotgun.[1]

Miss Neal bought a shotgun[2] because she and Broadus
felt that it was needed to protect the Trinity residence,
and the gun was kept loaded in the living room. On March
1, 1991, the Trinity residence was searched pursuant to
a warrant. At that time, the Mossberg shotgun was in the
living room. These were not the only guns obtained by
members of the conspiracy. Brooks exchanged drugs for a
.38 pistol, which McCall later took to New York and ended
up in Sidberry's residence there. Brooks, Broadus, and
Sidberry acquired a .45, a 9-millimeter carbine and a
.44-millimeter carbine. They gave one of the guns to
McCall to take to New York. The AR-15, a Tech
9-millimeter and a .357 were kept at Broadus' Trinity
residence. On November 21, 1991, agents of the Drug
Enforcement Administration, pursuant to arrest warrants
issued in North Carolina, arrested Broadus, Gaines, and
Paret in a residence in Elmont, New York. Two loaded
handguns, a .357 magnum and a .38 revolver were seized in

the basement of the residence, and a machine gun was seized from a bathroom hamper.

At trial, the judge instructed the jury that, in order to convict, they must find that a defendant was a member of the single conspiracy charged in the indictment, and not a member of some other separate conspiracy. The jury convicted each defendant of the single conspiracy charge in Count One of the indictment. In addition to the conspiracy conviction, the jury convicted . . . Broadus of five substantive drug offenses, Counts Two, Three, Five, Seven, and Eight, and both weapons possession charges, Counts Four and Six. At the sentencing hearing on September 4, 1992, Pearson recanted some of his testimony at trial, and Hinton testified that he worked for Broadus and not for Gaines and that the two had separate drug dealing organizations. The defendants moved for a new trial, on the basis of Pearson's recanted testimony, as well as the testimony of Hinton at that hearing, but the district court denied the motion. After being charged with perjury, Pearson pleaded guilty to lying at the sentencing hearing, rather than at trial.

---

[1]    Count Four of the indictment charged that Sidberry, Broadus, and Gaines, among other co-conspirators, on or about January 28, 1991, possessed an Olympic Arms, SAW-15 semi-automatic rifle and an Arms Corporation 12 Gauge shotgun in violation of 18 U.S.C. § 924(c)(1). The AR-15 rifle and the shotgun seized from Hinton at the time of his arrest are the weapons referred to in this count.

[2]    This shotgun is the one referred to in Count Six, which charged that the defendants, among others, on or about March 1, 1991, possessed a Mossberg, Model 500, 12-gauge shotgun, in violation of 18 U.S.C. § 924(c)(1).

Broadus, 1994 WL 602745 at *1-*3.

## Grounds 1 and 4: Prosecutorial Misconduct

Petitioner alleges that Agent Ingram, with the knowledge and encouragement of the United States Attorney, presented perjured testimony at trial and to the Grand Jury, and that the indictment was not valid because it was based on this testimony. He alleges that the trial was "fatally infested with repeated examples of perjury and prosecutorial misconduct." (Docket No. 76 at 17)

-6-

Other than this generalized, conclusory allegation, he makes two specific ones: He alleges that the 88 grams of "crack" that were seized from Michael Anderson (later identified as Willie Pearson) did not belong to the conspiracy organization, as Agent Robert Ingram of the Drug Enforcement Agency testified. Petitioner also alleges that Sharon L. Neal did not supply "all" of the information against petitioner and other defendants, as he alleged that Agent Ingram had also testified. (Docket No. 76 at 2; 16-18) This is apparently based on a copy of an alleged affidavit purportedly made by Neal on February 16, 1994 attached to petitioner's Memorandum. He then presents a few pages of Ingram's testimony before the grand jury and thinks he sees inconsistencies as a basis for perjury. The government's brief (pp. 8-11) clearly shows that petitioner takes words out of context. Moreover, this purported affidavit of Neal is <u>contrary</u> to her trial testimony.

A conviction must be set aside if there is any reasonable likelihood that false testimony could have affected the judgment. <u>United States v. Bagley</u>, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). However, a mere recantation by a witness or inconsistencies in the testimony are not sufficient to warrant relief. In order to prevail on such a claim, petitioner must show that the government knew that the testimony being offered was false. <u>Stockton v. Virginia</u>, 852 F.2d 740, 749 (4th Cir. 1988) (citing <u>Thompson v. Garrison</u>, 516 F.2d 986, 988 (4th Cir. 1975) (citations omitted), <u>cert. denied</u>, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975)), <u>cert. denied</u>, 473 U.S. 667, 105 S.Ct. 3375,

87 L.Ed.2d 481 (1989). This he completely fails to do. For this reason alone, his claim of prosecutorial misconduct should be dismissed.

In addition, the two instances of alleged perjury actually amount to no more than semantic confusion or minor inconsistencies. One of the incidents mentioned by petitioner involved Mr. Pearson, who recanted his trial testimony at sentencing. However, he later recanted the recantation by pleading "guilty to lying at the sentencing hearing, rather than at trial." Broadus, 1994 WL 602745 at *3. The other matter involving Brooks' and others' relationship with petitioner was amply proven by other testimony as true. Neal had a chance to say otherwise at trial. Therefore, petitioner's allegations of perjury and prosecutorial misconduct should be dismissed.

### Ground 2: Ineffective Assistance of Counsel

In order to prove ineffective assistance of counsel, petitioner must establish that his attorney's performance fell below a reasonable standard for defense attorneys and that he was prejudiced by this performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The proper standard for prejudice requires a showing that but for the attorney's errors the result of the proceedings probably would have been different. Counsel is strongly presumed to offer effective assistance, and a court should apply a "heavy measure of deference" to an attorney's decisions. Id. at 690-91. The court need not determine whether counsel's performance was objectively unreasonable where petitioner

cannot show prejudice. Id. at 697. An attorney's tactical error or failure to raise an objection does not prove ineffective assistance unless it is both incompetent and prejudicial. Fitzgerald v. Thompson, 943 F.2d 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

Relief for ineffective assistance of counsel can be granted only if petitioner can show specific errors made by counsel. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Petitioner is not entitled to a hearing based upon unsupported conclusory allegations. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), cert. denied, 507 U.S. 923, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993).

1) Petitioner alleges that his attorney at trial should have prevented Agent Ingram and others from giving allegedly perjurious testimony to the Grand Jury. (Docket No. 75) He further alleges that counsel, at a minimum, should have objected to the indictment once it was issued. (Docket No. 76 at 10) First, the Sixth Amendment right to assistance of counsel does not attach before indictment. Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The indictment was issued on November 27, 1991. (Docket No. 3) Counsel was appointed on December 18, 1991. (Docket No. 13) Therefore, counsel could not have rendered ineffective assistance before December 18, 1991. Second, disposition of Grounds 1 and 4, supra, demonstrates that there was no perjury and no prosecutorial misconduct. Therefore, counsel had

-9-

no grounds for an objection to the indictment as based upon perjured testimony.

2) Petitioner alleges that counsel failed to submit a motion for a new trial after "exculpatory testimony" at sentencing. (Docket No. 75) Petitioner does not specify to what information he refers. Therefore, this allegation is wholly conclusory and could be dismissed on that ground alone. <u>Nickerson</u>, 971 F.2d at 1136. In his memorandum, however, petitioner mentions the testimony of witness Grannum at sentencing as a basis for a new trial motion. (Docket No. 76 at 2) Regardless, the testimony at sentencing from either defense witness, Grannum or Pearson, would not provide grounds for arguing for a new trial. <u>See</u> <u>United States v. Bales</u>, 813 F.2d 1289, 1295 (4th Cir. 1987). Grannum testified that there were "different groups" for the purposes of command and control, but this testimony was not competent, alone, to determine whether there was one or many conspiracies. (Docket No. 71, Sentencing Tr. Test. Of Gary Grannum, at 14) Pearson's recantation at sentencing was also found to be without credibility, <u>supra</u>, and cannot support a new trial motion. The Fourth Circuit fully considered this claim and affirmed the district court's denial of the motion. <u>Broadus</u>, 1994 WL 602745 at *5-*6. Consideration of the claim in a § 2255 motion is, therefore, barred. <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir.1976), <u>cert. denied</u>, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976). There could be no prejudice to petitioner where a new trial motion would be in vain. This

allegation cannot support a claim of ineffective assistance of counsel. <u>Fitzgerald</u>, 493 F.2d 463, 469-70.

3) Petitioner alleges that his appellate counsel failed to raise a claim of ineffective assistance of counsel and to seek review of the denial of his new trial motion. (Docket Nos. 75, 76 at 10-13) The Fourth Circuit has repeatedly held that a claim of ineffective assistance of counsel should be raised by motion under 28 U.S.C. § 2255 and not on direct appeal, unless it "conclusively appears" from the record that the defendant's counsel at trial did not provide effective representation. <u>United States v. Matzkin</u>, 14 F.3d 1014, 1017 (4th Cir. 1994), <u>cert. denied</u>, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1995). There is no evidence of ineffective assistance of counsel that "conclusively appears" on the record. Conforming to Fourth Circuit practice by deferring these claims to a § 2255 motion cannot, therefore, support an allegation of ineffective assistance of counsel on appeal. Petitioner was not prejudiced by counsel's failure to submit a motion for new trial on this basis. This allegation is meritless and should be dismissed.

4) Finally, petitioner alleges that counsel was ineffective when he failed to object to the indictment by reason that the evidence, he contends, shows multiple conspiracies, not a single conspiracy. (Docket No. 76 at 10) The claim that the evidence demonstrated multiple conspiracies was thoroughly and explicitly considered by the Fourth Circuit. It stated:

> The defendants claim there was insufficient evidence
> to support the jury's finding that they engaged in the

-11-

single conspiracy charged in the indictment. Rather,
they claim the evidence showed the existence of multiple
conspiracies, in that Broadus, Gaines, and Sidberry ran
separate distribution networks. . . . [I]t is evident
that the jury's determination of a single conspiracy and
each defendant's agreement and participation in that
conspiracy is supported by substantial evidence, and,
therefore, . . . we must affirm the convictions. The
evidence showed that Broadus orchestrated this drug
dealing organization, and that he, along with the help of
Sidberry, Gaines, and others, would import cocaine to
North Carolina from New York by giving money to drug
couriers, including sometimes Sidberry and Gaines
themselves, who would bring drugs back for distribution
by Broadus, Gaines, Sidberry and others. The fact that
each of the three defendants may not be tied to each and
every transaction, or sometimes utilized street level
dealers that the others did not, does not change this
conclusion, especially where there was evidence
introduced which tended to show that they shared the goal
of the conspiracy, weapons, drug couriers, drug
deliveries, some drug distributors, and use of the drug
houses at High Street and Holt Avenue. . . . [N]o exact
formal structure might be adduced from the evidence here,
but the interdependence of Broadus, Gaines, and Sidberry
in pursuing the goal of the conspiracy to distribute
crack in the Greensboro area, is evident.

Broadus, 1994 WL 602745 at *4. A criminal defendant is forbidden

"to recast, under the guise of a collateral attack, questions fully

considered" on direct review. Boeckenhaupt, 537 F.2d at 1183.

Therefore, this allegation is barred from consideration in this §

2255 motion.

## Ground 3: Invalid Conviction on Count Four
## Under United States v. Bailey

Petitioner alleges that, under the interpretation of "use"

defined in United States v. Bailey, 516 U.S. 137, 116 S.Ct. 501,

133 L.Ed.2d 472 (1995), his sentence was invalid because the court

plainly erred in instructing the jury under the previously

acceptable meaning of "use." (Docket No. 75) The government

states that the instruction on the meaning of "use" was not

-12-

entirely consistent with the definition in <u>Bailey</u>, but that any error in the instructions was slight and harmless. (Docket No. 79 at 18)  The Court agrees that the instruction on the meaning of "use" was infirm.[3] (Docket No. 61, Tr. of Jury Instructions at 20-21)  However, the court also instructed on the element of "carry," which did conform to the definition employed in the Fourth Circuit.[4] (Docket No. 79 at 15)  It also instructed the jury on how to apply the "Pinkerton Doctrine" to Count Four as to petitioner.  (Docket No. 62 at 16)

The facts, as noted, <u>supra</u>, establish that petitioner's co-conspirators "carried" the firearms in conformity with this definition, and that, under the Pinkerton Doctrine, petitioner is accountable these acts of his co-conspirators.  <u>United States v. Cummings</u>, 937 F.2d 941 (4th Cir.), <u>cert. denied</u>, 502 U.S. 948, 112 S.Ct. 395, 116 L.Ed.2d 345 (1991) (applying doctrine in <u>Pinkerton</u>

---

[3]  "Use" includes,

brandishing, displaying bartering, striking with, and most obviously, firing or attempting to fire, a firearm. . . . [E]ven an offender's reference to a firearm in his possession could satisfy 924(c)(1).  Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a "use," just as the silent but obvious and forceful presence of a gun on a table can be a "use."

<u>Bailey</u>, 516 U.S. 137, 116 S.Ct. 501, 508, 133 L.Ed.2d 472 (1995).  In petitioner's case, the court instructed that "use" of a firearm required possession, "actual, constructive, sole or joint, [that] facilitated in any manner a drug trafficking offense."  (Docket No. 62, Tr. of Jury Instructions at 21)

[4]  The plain meaning of "carry" in § 924(c) requires knowing possession, movement, conveyance, or transportation of a firearm in some manner.  <u>United States v. Mitchell</u>, 104 F.3d 649, 653 (4th Cir. 1997).  For the "carry" element, the possession may be actual, where the firearm is under the immediate control of defendant, or constructive, in that the defendant exercise dominion and control over the weapon or the place where the weapon is located.  <u>Id.</u>

v. United States, 328 U.S. 640, 646-47 (1946) to convictions on §

924(c)(1) for acts of co-conspirator); See Broadus, 1994 WL 602745

at *3, *5.  The Fourth Circuit fund that the AR-15 rife was carried

by Broadus and Hinton when they picked up the drug money.  Broadus,

1994 WL 602745 at *3.  This weapon was specifically identified as

one of the guns in Count Four.  Id. *7 n.1. As to the Pinkerton

connection of petitioner, the Fourth Circuit stated that petitioner

> w[as] aware of Broadus' and Hinton's drug dealing
> activities in furtherance of the conspiracy and that the
> conspiracy used guns for its protection, having been
> present when some guns were bought and having bought guns
> themselves and received other guns from Broadus or other
> members of the conspiracy.  Thus, it was reasonably
> foreseeable to Sidberry and Gaines that co-conspirators
> Broadus and Hinton would have guns for protection of the
> drug enterprise.  To satisfy Pinkerton it is not
> necessary that the government prove, as the defendants
> contend, that the conspirators had knowledge that Broadus
> or Hinton possessed these particular guns.

Broadus, 1994 WL 602745 at *5.

Petitioner did not object to the instruction at trial nor did

he raise it on appeal.  Accordingly, he can be in no better

position than if he were claiming that this instruction amounted to

plain error.  This was the issue before the Fourth Circuit in

United States v. Hastings, 134 F.3d 235 (4th Cir. 1998), petition

for cert. filed, (U.S. Apr. 14, 1998) (No. 97-8732).  In that case,

the petitioner was convicted of using or carrying a firearm during

a drug trafficking offense.  The Court misinstructed on the "use"

prong of the firearm offense, but Bailey was decided during the

pendency of the appeal.  Nevertheless, the Fourth Circuit upheld

the conviction.

-14-

There are several factors central to the Fourth Circuit's holding. First, the court found that the instructional error that occurred in the firearm case was one of misinstruction as opposed to non-instruction. This distinction meant that the case was not subject to that narrow category of errors which would require automatic reversal. Next, the court found that because the defendant failed to object, he must proceed under the plain error provisions of Fed. R. Crim. P. 52 and, therefore, it was petitioner, not the government, who had the burden of showing error. (The instant Section 2255 petitioner falls into that same category.) Because of this burden, the court found that the defendant had the burden of demonstrating that the erroneous "use" instruction actually resulted in his conviction. On the facts of that case, the court found this could not be because the evidence showed that the defendant took the firearm from his closet, loaded it, put it into his pocket, and transported it in his automobile within reach when the drug transaction occurred. Although this did not satisfy the Bailey definition of "use," it did establish that the firearm had been "carried."

The facts in the instant case likewise show that if the jury relied on the erroneous "use" instruction, it necessarily had to find all of the elements required to show that petitioner "carried" the firearm using the Pinkerton Doctrine. See facts quoted, supra. Thus, as in Hastings, the petitioner simply will not be able to demonstrate that the jury rested its verdict solely on a legally

inadequate misinstruction with respect to "use."[5]  Finally, it should be noted that in <u>Hastings</u>, the Fourth Circuit likewise noted that even if the defendant had shown prejudice from the erroneous "use" instruction, it still would have to use its discretion to determine whether there was a miscarriage of justice such that an innocent person was convicted or the error affected the fundamental fairness, integrity or public reputation of the judicial proceedings.[6]  The court found, under the facts in <u>Hastings</u>, that the circumstances would not warrant the exercise of such discretion.  The same may be said for the instant case.  Therefore, petitioner's claim of error should be denied.

IT IS THEREFORE RECOMMENDED that petitioner's motion to vacate, set aside or correct sentence (Docket No. 75) be DENIED and that Judgment be entered dismissing this action.

United States Magistrate Judge

May 28 , 1998

---

[5]  See also <u>United States v. Coward</u>, No. 96-7213, 1998 WL 24377 (4th Cir. Jan. 26, 1998) (dismissing § 2255 petitioner's appeal on § 924(c)(1) conviction because the misinstruction was not prejudicial).  In <u>Coward</u>, officers discovered petitioner in a bedroom with a revolver on the floor between himself and a codefendant, who admitted that he had "carried" the firearm and was then in possession of the firearm.  Similarly, petitioner was discovered in a house, with co-defendant Broadus whom he knew or should have known "carried" firearms in connection with his drug trafficking enterprise.  Firearms were present in several rooms of the house.

[6]  See <u>United States v. Wilson</u>, 135 F.3d 291 (4th Cir. 1998) (finding that even assuming that a misinstruction on use affected substantial rights, the court would not use its discretion to correct the error), <u>pet. for cert. filed</u>, (Apr. 20, 1998) (No. 97-8750).

**TAB - 3**

**TAB - 4**

93.

D/R.W.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT ANDREW GAINES,                 )
            a/k/a Smokey & Jamal,     )
                                      )
                      Petitioner,     )
                                      )
            v.                        )    1:97CV827
                                      )    2:91CR209-9
UNITED STATES OF AMERICA,             )
                                      )
                      Respondent.     )

FILED
NOV 13 1998

## O R D E R

On May 28, 1998, the Recommendation of the United States Magistrate Judge was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. Thereafter, the Court received petitioner's objections to the Recommendation.

The Court has appropriately reviewed petitioner's objections de novo and finds they do not change the substance of the United States Magistrate Judge's rulings which are affirmed and adopted.

**IT IS THEREFORE ORDERED** that petitioner's motion to vacate, set aside or correct sentence (docket no. 75) is denied, that this action is dismissed, and that finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, a certificate of appealability is denied.

_____
United States District Judge

November ~~August~~ 13 , 1998

GOVERNMENT
EXHIBIT
3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT ANDREW GAINES,                )
              a/k/a Smokey & Jamal,  )
                                     )
                    Petitioner,      )
                                     )
              v.                     )        1:97CV827
                                     )        2:91CR209-9
UNITED STATES OF AMERICA,            )
                                     )
                    Respondent.      )

**FILED**
**NOV 1 3 1998**
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

## J U D G M E N T

For the reasons set out in an Order filed contemporaneously with this Judgment,

**IT IS ORDERED AND ADJUDGED** that petitioner's motion to vacate, set aside or correct sentence (docket no. 75) is denied, that this action is dismissed, and that finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, a certificate of appealability is denied.

_____
United States District Judge

November
~~August~~ 13, 1998

**Home  Pacer  Opinions**                                                **Help**

# General Docket
## US Court of Appeals for the Fourth Circuit

```
Court of Appeals Docket #: 00-876                    Filed: 11/15/00
Nsuit:    0
In re: In Re:  Gaines
Appeal from: Middle District of North Carolina at Greensboro

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Lower court information:

     District: 0418-2 : CR-91-209
     Involved Judge: N. Carlton Tilley, Jr., Chief District Judge
     Date Filed: **/**/**
     Date order/judgment: **/**/**
     Date NOA filed: **/**/**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Fee status: Not Applicable

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Prior cases:
  98-7833   HEW    KJW    MBM
  Date filed: 12/22/98  Date disposed: 8/19/99  Disposition: opn.u
  93-5299   HEW    KJW    MBM
  Date filed: 4/12/93   Date disposed: 11/4/94  Disposition: opn.u.arg

Current cases:
  None

Docket as of November 30, 2000 10:56 pm              Page 1
```

---

```
00-876   In re: In Re:  Gaines

In Re: ROBERT ANDREW GAINES       Robert Andrew Gaines
       Movant                     #38739-053
                                  [NTC PSE]
                                  FEDERAL CORRECTIONAL
                                  INSTITUTION ALLENWOOD
                                  P. O. Box 2000
                                  White Deer, PA 17887-2000


-------------------------

                                  Walter C. Holton, Jr., United
                                  States Attorney
                                  336-333-5351
                                  [NTC GVT]
                                  OFFICE OF THE U. S. ATTORNEY
                                  P. O. Box 1858
                                  Greensboro, NC 27402

Docket as of November 30, 2000 10:56 pm              Page 2
```

---

```
00-876   In re: In Re:  Gaines
```

GOVERNMENT
EXHIBIT
4
PENGAD-Bayonne, N. J.

11/15/00          Motion for authorization to file successive application
                  (2244 case) docketed.  (dhb)

11/15/00          Motion filed by Movant Robert Andrew Gaines for
                  authorization to file successive application [3286972-1].
                  (dhb)

11/30/00          COURT ORDER filed denying motion to file successive
                  application [3286972-1]  Copies to all counsel.  [00-876]
                  (dhb)

Docket as of November 30, 2000 10:56 pm                Page 3

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/10/2001 10:22:56 | | |
| **PACER Login:** | us4890 | **Client Code:** | |
| **Description:** | dkt report | **Case Number:** | 00-876 |
| **Billable Pages:** | 3 | **Cost:** | 0.21 |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT ANDREW GAINES,                 :
              Petitioner      :      No. 1:CV-01-0183
                        :
        v.                      :      (Judge Rambo)
                        :
MICHAEL ZENK, et al.,                  :
             Respondent      :

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

       That this 26th day of April, 2001, she served a copy of the attached

**GOVERNMENT'S EXHIBITS IN SUPPORT OF RESPONSE TO
THE PETITION FOR WRIT OF HABEAS CORPUS**

by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Addressee:

Robert A. Gaines
Reg. No. 38739-053
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887

ANITA L. LIGHTNER
Paralegal Specialist